**IN THE UNITED STATED DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Starstone National Insurance Company, | ) | |
| Walcott Aviation, Inc., 3G Aviation, LLC | ) | |
| and London Aviation Underwriters, Inc., | ) | 2024 cv _____ |
| | **)** | |
| Plaintiffs, | ) | |
| | **)** | |
| **v.** | ) | |
| | **)** | |
| Chicago Aviation Services, LLC, | ) | |
| Dan (Doe), and  Matthew Mukenschnabl, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT**

NOW COMES, Plaintiffs, Starstone National Insurance Company ("Starstone") and London

Aviation Underwriters, Inc. ("LAU"), as subrogees of Walcott and 3G, and Walcott Aviation,

Inc. ("Walcott") and 3G Aviation, LLC ("3G"), for their uninsured loss, by and through their

attorneys, and Brandt R. Madsen of Amundsen Davis LLC, and for their Complaint against

Defendants Chicago Aviation Services, LLC ("CAS"), Dan (Doe) and Matthew Mukenschnabl

("Mukenschnabl"), state and allege as follows:

**The Parties**

1. *Starstone* is a Delaware corporation, whose principal place of business is 201 E. Fifth

Street, Cincinnati, Ohio 45202,

2. *Walcott* is a Florida corporation, whose business address is 937 E. 11th Ave., Tampa FL

33605.

3.   *3G* is a Indiana limited liability company, whose business address is 320 N. Meridian, Ste 817, Indianapolis IN 46204.

4.   *LAU* is a Washington corporation, whose principal business address is 33405 6ᵗʰ Ave. S., Federal Way, Washington, 98003-6335.

5.   *CAS*, is an Illinois limited liability company, whose principal place of business is 3N020 Powis Rd., West Chicago, IL 60185.

6.   *Mukenschnabl and Dan (Doe),* on information and belief are citizens of the State of Illinois.

**Jurisdiction**

7.   The incident giving rise to this Complaint occurred on January 16, 2023, in the City of West Chicago,  DuPage County, Illinois.

8.   Jurisdiction is proper pursuant to 28 U.S.C. § 1332 (a) as the amount in controversy exceeds $75,000 and there is complete diversity of citizenship as no plaintiff is domiciled in the same state as the defendant.

9.   Venue is proper under 28 U.S.C. § 1391 (b)(2), as a substantial part of the vents giving rise to the claim occurred in the Northern District of Illinois, Eastern Division, which encompasses the locus of the occurrence, namely, DuPage County Airport.

**General Allegations**

10. At all relevant times, Starstone and LAU (collectively and in the alternative, referred to as "Insurers") were authorized to conduct insurance business in the State of Illinois.

11. At all relevant times, Walcott and 3G (collectively referred to as "Owners") owned a 2009 Cessna Mustang 510 aircraft bearing the FAA identifier, N217GR ("Aircraft")

12. On and before January 16, 2023, Insurers issued a policy of insurance to the Owners and its individual executives officers & shareholders, under policy number SAV100573602 for policy year June 23, 2022 through June 23, 2023, which provided insurance for, among other things, the Aircraft.

13. On or about December 30 2022, the Owners flew the Aircraft to DuPage Airport and taxied to a facility operated by CAS. The landing gear operated normally during this landing and taxi operation.

14. At that time and place, the Owners turned the Aircraft over to CAS to perform progressive maintenance. CAS then maneuvered the Aircraft from where it was parked on the ramp and into a hangar. The landing gear operated normally during this repositioning of the Aircraft under CAS's control.

15. The maintenance was to be performed pursuant to a maintenance agreement between the Owners and CAS, that required, among other items, CAS to perform scheduled and unscheduled maintenance in compliance with the Federal Aviation Regulations and manufacturer maintenance requirements (Maintenance Agreement, Attached as Exhibit "A").

16. The Aircraft remained in the care, custody and control of CAS from December 30, 2022 up to and including January 16, 2023, during which time CAS, Dan (Doe) and Mukenschnabl performed various maintenance on the Aircraft.

17. This maintenance included work on the Aircraft's landing-gear systems, including replacement and/or servicing of the nitrogen bottle.

18. The work on the nitrogen bottle was not performed in compliance with the Federal Aviation Regulations, the Maintenance Agreement or the Manufacturer recommendations.

19. On January 16, 2023, while still in the care, custody and control of CAS, CAS and/or Dan (Doe) manipulated various controls in the Aircraft, including pulling a number of circuit brakers on the Aircraft and then applied power to the Aircraft systems.

20. Immediately after applying power to the Aircraft systems, the Aircraft nose-gear retracted and caused significant damage when the Aircraft came into contact with the ground (the "Incident").

21. Dan (Doe), an employee of CAS, was in the cockpit of the Aircraft at the time of the incident.

22. Dan (Doe) and/or CAS did not comply with the Federal Aviation Regulations when performing maintenance on the Aircraft.

23. Dan (Doe) and/or CAS did not follow the manufacturer recommendations when performing maintenance on the Aircraft.

24. As a result of the Incident, the Aircraft sustained extensive damage that required costly repairs.

25. After the Incident, the Aircraft was placed on jacks.

26. Neither CAS nor Mukenschnabl obtained permission from the Owners to perform any further work on the Aircraft after it was placed on jacks.

27. The Owners specifically requested that CAS and Mukenschnabl not do anything to the Aircraft after it was placed on jacks.

28. Without obtaining permission and against the direct request of the Owners, CAS and Mukenschnabl continued to touch the Aircraft, alter condition of the Aircraft and perform maneuvers on the Aircraft after it was placed on jacks, including cycling the landing gear.

29. As a result of the Incident, the Owners submitted an insurance claim under its Policy to Insurers for costs related to repairing the damage to the Aircraft.

30. Pursuant to its obligations under the Policy, Insurers made payments on behalf of the Owners in the amount of $219,280.62 related to the repairs to the Aircraft.

31. Relative to the adjustment of its claim under the Starstone policy issued to the Owners, the Owners issued an assignment of its rights for any and all claims covered by the Proof of Loss may have against any third-parties arising out of the Incident to the extent of Starstone's payment.  A copy of the Statement in Proof of Loss containing the assignment in paragraph 6 Subrogation, is attached hereto as Exhibit B.

32. As a result of the aforementioned payments to or on behalf of the Owners pursuant to its Policy, the Policy and the Assignment attached hereto as Exhibit B, Insurers are actual bona fide subrogees of the Owners to the extent of the aforementioned payments made.

33. In addition to the damages set forth in the prior paragraphs, the Owners sustained additional damages that were not covered by the Insurers Policy, including but not limited to deductible, subscription costs, travel costs, out of pocket costs, carrying costs for the Aircraft and diminution in value to the aircraft.

### Count I
### Negligence against Chicago Aviation Services and Dan (Doe)

34. Plaintiffs adopt and incorporate paragraphs 1 - 33 above, as though fully set forth herein.

35. At all relevant times, Defendants, CAS and Dan (Doe), owed a duty to the Owners to use reasonable and ordinary care with respect to its business operations, including  safely performing maintenance on the Aircraft.

36. Notwithstanding the aforementioned duty, and in breach thereof, Defendants CAS and Dan (Doe) committed one or more of the following negligent acts and/or omissions:

a. Failed to follow manufacturer procedures relative to maintenance of the Aircraft;

b. Failed to follow manufacturer procedures relative to the operation of the landing gear of the Aircraft;

c. Failed to comply with the Federal Aviation Regulations maintenance requirements;

d. Failed to provide support for the Aircraft to prevent settling of the Aircraft onto the ground;

e. Failed to safely perform maintenance procedures in order to prevent damage to the Aircraft;

f. Failed to safely and properly remove test and/or replace the landing gear blow-down bottle;

g. Failing to confirm the safe condition of the Aircraft landing gear systems after replacement of the landing gear blow-down bottle;

h. Failed to monitor the actions of its employees and contractors;

i. Failed to obtain permission to change the condition of the aircraft after the Incident;

j. Changed the condition of the Aircraft after the Incident, compromising evidence of cause;

k. Failed to confirm safe configuration prior to manipulating the controls and pull circuit breakers of the Aircraft;

l. Failed to confirm safe configuration of the Aircraft prior to applying power to the Aircraft systems;

m. Otherwise failing to use due care under the circumstances.

37. As a direct and proximate result of one or more of the negligent, careless and/or reckless acts and/or omissions of CAS and/or Dan (Doe), the Owner's Aircraft sustained significant damage and required extensive repairs.

38. Plaintiff, Insurers made payments relating to the repairs to its Policy in the amount of $219,280.62. Insurers are seeking the entirety of the amount of the Proof of Loss.

39. In addition to damages relating to the Proof of Loss, Plaintiffs, Walcott and 3G, suffered additional uninsured damages as a direct and proximate result of the Incident, in excess of $200,000.

WHEREFORE, Plaintiffs Insurers, as subrogee of Walcott and 3G, prays for judgment against Defendants, Chicago Aviation Services and Dan (Doe) for damages in the amount of $219,280.62, and, additionally, Plaintiffs Walcott and 3G pray for judgment against Defendants, Chicago Aviation Services and Dan (Doe), for additional damages in an amount in excess of $200,000, plus reasonable and proper interest as allowed by law, the costs of this action, and for such other and further relief as this Court deems just and appropriate.

## Count II
## Bailment against CAS

40. Plaintiffs adopt and incorporate paragraphs 1 - 39 above, as though fully set forth herein.

41. On December 30, 2022, the Owners gave possession of the Aircraft to CAS in good working order and condition.

42. CAS accepted delivery of the Aircraft in good working condition on December 30, 2022.

43. CAS was to maintain possession of the Aircraft while it performed maintenance on the Aircraft.  Thereafter, CAS was to redeliver possession of the Aircraft to the Owners.

44. CAS's possession of the Aircraft on and after December 30, 2022 created a bailment.

45. Through no fault of the Owners, the Aircraft was damaged, destroyed and or rendered useless while in CAS's possession.

46. CAS failed to redeliver the Aircraft in the same or better condition as when it took possession.

47. The Owners and their subrogor, Insurers, were damaged in excess of $400,000 by the damage to the Aircraft occurring during CAS's possession.

WHEREFORE, Plaintiffs Insurers, as subrogee of Walcott and 3G, prays for judgment against Defendant, Chicago Aviation Services, for damages in the amount of $219,280.62, and additionally, Plaintiffs, Walcott and 3G, pray for judgment against Defendant, Chicago Aviation Services, for additional damages in an amount in excess of $200,000, plus reasonable and proper interest as allowed by law, the costs of this action, and for such other and further relief as this Court deems just and appropriate.

## Count III
## Spoliation against CAS & Mukenschnabl

48. Plaintiffs adopt and incorporate paragraphs 1 - 47 above, as though fully set forth herein.

49. CAS and Mukenschnabl owed the Owners a duty to preserve evidence related to the Incident, specifically including preservation of the systems and instrument selections as they were at the time of the incident.

50. Special circumstances existed further requiring CAS and Mukenschnabl to not destroy evidence of the cause of the Incident

51. The Owners specifically instructed CAS and Mukenschnabl not to touch the Aircraft until the Owners could make an investigation.

52. CAS and Mukenschnabl breached their duty to preserve evidence by, among other items:

   a. Cycling the landing gear after the Incident;

   b. Releasing the pressure in the Aircraft systems after the Incident;

   c. Altering the condition of the Aircraft after it was placed on jacks;

d. Changing the settings on the Aircraft and related components after the Incident;

e. Approving additional maintenance on the Aircraft after the Incident;

f. Failing to fully and completely document the condition of the Aircraft and system settings after the Incident;

g. Failing to fully and completely document the pressure in the Aircraft systems after the incident;

h. Failing to provide notice prior to making changes to the Aircraft and its systems;

i. Failing to comply with the Owner's request to stay away from the Aircraft after the Incident;

j. Preforming additional task on the Aircraft after the Incident that compromised the Owner's ability to establish the cause of the Incident;

k. Otherwise compromised and/or destroyed the ability to establish the cause of the Incident.

53. CAS and Mukenschnabl took these steps prior to the opportunity of the Owners to inspect the Aircraft to confirm its condition and settings at the time of the incident.

54. The Loss or destruction of the evidence proximately caused Owners ability to definitively establish the cause of the Incident to be deeply compromised.

WHEREFORE, Plaintiffs Insurers, as subrogee of Walcott and 3G, prays for judgment against Defendants, Chicago Aviation Services and Mukenschnabl, for damages in the amount of $219,280.62, and, additionally, Plaintiffs, Walcott and 3G, pray for judgment against Defendants, Chicago Aviation Services and Matt Mukenschnabl, for additional damages in an amount in excess of $200,000, plus reasonable and proper interest as allowed by law, the costs of this action. In addition, the Plaintiffs request an order from this Court (i) barring CAS or Mukenschnabl from filing any other pleading relating to cause of the gear retraction and resulting damages; (ii) barring CAS or Mukenschnabl from maintaining a particular claim,

counterclaim, third-party complaint, or defense relating to the cause of the gear retraction and resulting damages; (iii) barring any defense witnesses from testifying concerning that issue; (iv) entering a default judgment against CAS and Mukenschnabl; (v) striking any defense pleading relating to that issue; (vi) granting the "Missing Evidence " instruction against CAS and Mukenschnabl at the time of trial; (vii) award all costs and attorney fees incurred by any Plaintiff relative to this matter; and for such further relief as this court deems just and appropriate.

**Count IV**
**Breach of Contract against CAS**

55. Plaintiffs adopt and incorporate paragraphs 1 - 54 above, as though fully set forth herein.

56. The Maintenance Agreement was valid and enforceable at the time of the Incident;

57. The Maintenance Agreement required CAS to perform certain services in compliance with the Federal Aviation Regulations and Textron maintenance documents.

58. CAS failed to perform maintenance to the Aircraft in compliance with the Maintenance Agreement,

59. As a result of CAS's breach of the Maintenance Agreement, Insurers, as subrogee of Walcott and 3G, Walcott and 3G were damaged.

WHEREFORE, Plaintiffs Insurers, as subrogee of Walcott and 3G, prays for judgment against Defendant, Chicago Aviation Services, for damages in the amount of $219,280.62, and Plaintiffs, Walcott and 3G, pray for judgment against Defendant, Chicago Aviation Services, for additional damages in an amount in excess of $200,000, plus reasonable and proper interest as allowed by law, the costs of this action, and for such other and further relief as this Court deems just and appropriate.

Respectfully Submitted,

Walcott Aviation, Inc., 3G Aviation, LLC
London Aviation Underwriters, Inc., and
Starstone National Insurance Company

By:_____
            One of its Attorneys

Brandt R. Madsen (Atty # 6200317)
Amundsen Davis, LLC
150 North Michigan Avenue, Suite 3300
Chicago, Illinois 60601
Phone: (312) 894-3200
Fax: (312) 894-3210
bmadsen@amundsendavislaw.com